WILLIAM F. HYLAND, ATTORNEY GENERAL OF NEW JERSEY, AND JAMES McLELLAND SMITH, CHIEF OF THE BUREAU OF SECURITIES OF THE STATE OF NEW JERSEY, PLAINTIFFS, FARMERS BANK OF THE STATE OF DELAWARE, INTERVENOR-APPELLANT, v. ANCHOR FINANCE COMPANY, INC., A NEW JERSEY CORPORATION, AND WILLIAM J. VALYO, DEFENDANTS, AND GORDON C. STRAUSS, STATUTORY RECEIVER OF ANCHOR FINANCE COMPANY, INC., RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 16, 1976—Decided January 4, 1977.

Before Judges CRANE, MICHELS and LEONARD.

*Mr. Frederic J. Schragger* argued the cause for appellant Farmers Bank of the State of Delaware (*Messrs. Schragger, Schragger & Lavine,* attorneys).

*Mr. Leon Robinson* argued the cause for respondent Gordon C. Strauss, Statutory Receiver of Anchor Finance Company, Inc. (*Messrs. Teich, Groh and Robinson,* attorneys; *Mr. Arthur Teich* on the brief).

The opinion of the court was delivered by

MICHELS, J. A. D. Intervenor Farmers Bank of the State of Delaware (Farmers Bank) appeals from an order of the Chancery Division denying its motion to compel Gordon C. Strauss, the statutory receiver of Anchor Finance Co., Inc. (receiver) to turn over to it all of the accounts receivable of defendant Anchor Finance Co., Inc. (Anchor).

The pertinent facts are as follows: On April 16, 1974 Farmers Bank loaned Anchor $100,000. As security for this loan Anchor pledged all of the present and future accounts, contract rights, open accounts receivable, book

debts, notes, drafts, acceptances, instruments, chattel paper and other choses in action, and returned goods, and all products and proceeds thereof, now or hereinafter owned or held by or payable to it. Essentially, Anchor pledged its accounts receivable. A security agreement to this effect was signed by the parties and a financing statement required by the Uniform Commercial Code was filed with the Secretary of State of New Jersey. Under the terms of the security agreement, Farmers Bank had the right, upon default by Anchor, to notify all account debtors and to take control of the proceeds of the accounts. Additionally, the agreement contained an acceleration clause and, under the terms of that clause, Farmers Bank reserved the right to enforce payment of the loan without notice to the borrower and to exercise all rights under the Uniform Commercial Code. On July 10, 1974, a further loan of $75,000 was made under the security agreement and on October 31, 1974, Anchor borrowed an additional $11,167.07. The total loan outstanding was $186,187, without computation of interest. At the time, the face value of Anchor's outstanding receivables was in excess of $1,000,000.

In December 1974 plaintiffs William F. Hyland, Attorney General of New Jersey, and James McLelland Smith, Chief of the Bureau of Securities of the State, sought and obtained the issuance of an order to show cause requiring Anchor and defendant William J. Valyo, president of Anchor, to show why the further operation of Anchor should not be enjoined and a receiver appointed. This action was commenced under *N. J. S. A.* 49:3–69. Section (d) of that statute, in pertinent part, provides:

(d) When injunctive relief is granted as provided for in paragraph (b) against a corporation, partnership, company, association or trust, the court may appoint a receiver and may restrain the corporation, its officers, directors, stockholders, and agents, the partnership, company or association, its officers, members and agents, and the trust, its grantors, trustees, officers, cestuis que trustent and agents from exercising any of its privileges or franchises, and in the case of a trust from executing the trust, and in all cases from collect-

ing or receiving any debts, or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands, tenements or effects except to the receiver appointed by the court until the court shall otherwise order.

Upon the appointment of the receiver, all the real and personal property of the corporation, partnership, company, association or trust, and its franchises, rights, privileges and effects shall forthwith vest in him and the corporation, partnership, company, association or trust shall be divested of the title thereto.

The receiver shall settle the estate and distribute the assets, and have all the powers and duties conferred upon receivers by the provisions of Title 14, Corporations, General, so far as the provisions thereof are applicable.

Following a plenary hearing the Chancery Division entered an order on December 20, 1974 which enjoined future activity by Anchor and Valyo and provided for the appointment of the receiver. Apparently at that time Anchor was not in default of its loan from Farmers Bank. Thereafter, in January 1975, Farmers Bank, after notice to all creditors of Anchor, moved in the Chancery Court for status as an intervenor. Additionally, it sought to have its lien established and its priority set and sought, alternatively, either to redeem all accounts subject to the financing statement or to have all funds derived from the liquidation of those accounts turned over to it to satisfy the outstanding loan balance. Following argument the trial judge held that the lien of the Farmers Bank was valid and properly secured in the amount of $195,820.27. He also held the lien to be the number one secured obligation of Anchor as to all creditors upon whom the service of the order to show cause was effected. Interest on the payment of said sum from the date the receiver was appointed was reserved pending final distribution of all assets coming into the hands of the receiver. No appeal has been taken from this order.

Sometime thereafter Farmers Bank moved to obtain immediate possession of the accounts receivable that constituted security for its loan. Farmers Bank claimed that although the face value of those accounts was high, the actual value of the accounts receivable was far less than

the value of the debt secured thereby. It contended, therefore, that any assets realized by the sale of these accounts would accrue solely to its benefit and not the benefit of the other creditors. In this situation it did not want to be saddled with the expensive costs of liquidation by the receiver and sought immediate possession of the accounts receivable in order to liquidate them itself. Judge Lenox denied the motion, holding that even though Farmers Bank was a secured creditor with priority over other creditors, its claim did not have priority over or come ahead of the expenses of the receivership, and Farmers Bank was not entitled to immediate distribution of the assets of Anchor.

Farmers Bank then moved for reconsideration of the motion alleging new evidence. The evidence, an affidavit of Clifford T. Duck, an assistant treasurer of Farmers Bank, merely confirmed the prior claim that the accounts receivable were of minimal value. The affidavit contained a report of (1) a review of the Anchor accounts receivable by American Finance Management Corporation, a large finance company, which indicated that those accounts receivable having a total face value of $888,100 were only worth approximately $11,301, and (2) a review of those accounts by Oxford First Corp., another finance company, which indicated that the estimated maximum value of all of the accounts receivable in November 1975 was in the range of five to ten percent per dollar.[1] The trial judge denied the motion, and Farmers Bank appeals.

---

[1] While the appeal was pending we granted the receiver's motion to supplement the record on appeal to include Farmers Bank's motion for a partial distribution of funds then in the hands of the receiver, and the order of the Chancery Division making a partial distribution to Farmers Bank in the sum of $20,000. We afforded Farmers Bank an opportunity to respond. The material furnished to us revealed that as of August 31, 1976 the receiver had collected a total of $67,000, of which $49,000 represented collected receivables (a sum considerably greater than the alleged total value of those accounts), and approximately $16,000 from the sale of equipment owned by Anchor and a negotiated settlement of a brokerage case

We are satisfied from our study of the record that the trial judge properly denied Farmers Bank's motion to obtain immediate possession of the accounts receivable and affirm the order of the Chancery Division essentially for the reasons expressed by Judge Lenox in his oral opinion of October 17, 1975.

In New Jersey, priorities in the distribution of the assets of an estate placed in receivership are governed by *N. J. S. A.* 14A-14-20 and 21, which appear to apply whether the receivership action was brought under Title 14A or under some other statutory provision such, as here, *N. J. S. A.* 49:3-69. *N. J. S. A.* 14A:14-20, which empowers the court to award receivership costs, provides:

> In any proceeding under this chapter, the court shall allow a reasonable compensation to the receiver for his services and his costs and expenses in the receivership action. It shall also allow reasonable compensation to the following for their services in the receivership action and their costs and expenses: the attorney for the receiver, the appraiser, the auctioneer, the accountant and other persons appointed by the court in connection with the receivership action.

*N. J. S. A.* 14A:14-21, which sets the priorities in distribution, provides:

> (1) After payment of all allowances, expenses and costs, and the satisfaction of all liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been by confession for the purpose of preferring creditors. * * *

Our courts have consistently held that receivership costs have priority over the claims of a secured creditor. Thus,

---

involving Anchor. The remaining $2,000 came from interest income and insurance refunds. Counsel for the receiver informed us at oral argument that an on-going effort is being made to recover on the remaining outstanding accounts receivable, and that an action is to be instituted against some of the principals of Anchor to recover damages.

the expenses of the receivership have been preferred over a mortgage or other lien where it was equitable to do so. *Laudan v. ABC Travel System, Inc.,* 64 *N. J. Super.* 204, 207 (Ch. Div. 1960). See, *e. g., Seidler v. Branford Restaurant,* 97 *N. J. Eq.* 531, 533 (E. & A. 1925) (costs of receivership assessed against holder of chattel mortgage when sale of assets securing mortgage by receiver brought less than the face amount of the mortgage) ; *Pemberton, etc., Industries v. Wm. G. Ridgway Co.,* 38 *N. J. Super.* 383, 388 (Ch. Div. 1955) (receiver's certificates financing completion of home construction by insolvent corporation and costs of receivership given priority over claims of lienholders whose interests had attached prior to receivership). See also *Albert & Kernahan v. Franklin Arms,* 107 *N. J. Eq.* 468 (E. & A. 1931) ; *Bliss v. Linden Cemetery Ass'n,* 91 *N. J. Eq.* 329 (E. & A. 1920). *Cf. Foster v. Bay Front Land Co.,* 109 *N. J. Eq.* 569 (E. & A. 1932). The nature of the funds held by the receiver does not seem to affect their vulnerability to receivership claims. Thus, receivership costs have been assessed against funds held in trust by an insolvent corporation. In *Laudan v. ABC Travel System, Inc., supra,* an insolvent travel agency collected, held and transmitted money for airlines, hotels and shipping lines under an agreement which provided that

All moneys collected by the Agent for transportation sold hereunder * * * are the property of the Carrier and shall be retained by the Agent as the property of the Carrier until satisfactorily accounted for to the Carrier.

These funds were held part of the estate liable for receivership costs despite the court's recognition that they were held in trust and despite claims that trust funds in the hands of the receiver did not constitute assets and thus could not be charged with receivership expenses. 64 *N. J. Super.* at 207. Funds have also been reached despite claims by a lienholder that liquidation has been poorly managed and consequently that he has not been benefited by the re-

ceivership. *See Seidler v. Branford Restaurant, supra,* 97
*N. J. Eq.* at 535.

Our courts have expressed the concern that exclusion of
the assets of certain creditors from the estate would so
deprive that estate as to preclude payment of the receiver
for the services he renders the state at the behest of the
court. As stated in *Laudan v. ABC Travel System, Inc.,
supra*:

[Receivership] expenses are entitled to priority not only by virtue
of the statute, N. J. S. A. 14:14–22, but under general principles
of equity even where a lienholder is not benefited by the receivership.
As a matter of policy, to hold otherwise would deprive the courts of
the services in many cases of competent administrators and be sub-
versive of the administration of this important branch of equity
jurisdiction. [64 *N. J. Super.* at 206–207]

Similarly, in *Seidler v. Branford Restaurant, supra,* the
court stated:

The court below, therefore, in the present case, under the rule so
clearly established, was clothed with ample power to compel the
appellant to pay the expenses incident to the receivership. But, it
is said, conceding the power, the court should not have imposed the
expenses in the instant case on the appellant because the services
in continuing the business were not of benefit to the holder of the
mortgage. Assuming that the conduct of the business by the receiver
may not, in this particular case, have operated beneficially (though in
the opinion filed by the Vice-Chancellor the converse is stated to be
the fact), it would be unfortunate indeed if the rule were that an
officer of the court, acting under its direction, is dependent for his
expenses and compensation on the success or failure in a commercial
sense of his efforts in carrying out the order of the court. Receivers
are but the arms of chancery, appointed to preserve the property
of corporate and similar entities for the benefit of all parties in
interest, and in cases of insolvency to administer the estate under
the direction of the court. In theory of law, at least, a receiver has
no part in his own selection, but stands as the representative of the
court impartially between the parties. To hold that one thus chosen
and thus serving should incur the expenses and perform the duties
of the receivership at the risk of these expenses and services being
beneficial or otherwise to the estate or to any of the parties in
interest would be contrary to the whole theory of his office, deprive
the courts of the services in many cases of competent administrators,
and be subversive of the administration of this important branch of
equity jurisdiction. [97 *N. J. Eq.* at 535]

Farmers Bank unquestionably derived a benefit from the receivership of Anchor. For example, as the result of the receiver's administration of the estate, the priority of Farmers Bank's lien was established and the amount of its debt determined. In addition, as a result of the receiver's activities, marshalling and liquidating the assets of Anchor and collecting some of the accounts receivable, Farmers Bank received a partial distribution reducing the outstanding balance due on Anchor's debt. The time and effort expended and the expenses incurred by the receiver to date in both administering the estate of Anchor and in liquidating its assets have benefited Farmers Bank. We find no reason why Farmers Bank should not pay its equitable share of these expenses and thus, we are of the view that the receiver's claim for these expenses has priority over the claim of Farmers Bank.

Furthermore, although Farmers Bank may be the number one secured creditor (as against other creditors with notice of the proceeding) it is not the only creditor of the estate, and the amount of its debt has not been shown to be in excess of the total sum that may reasonably be expected to be recovered from the approximately $1,000,000 in accounts receivable. On the contrary, it appears that the receiver may recover on these receivables money in excess of the balance due on the debt owed to Farmers Bank. In view of all of the foregoing factors, we are satisfied that the orderly administration of the estate and the interest of all creditors can be best served by permitting the receiver to retain possession of and to continue to liquidate the accounts receivable at this time.

Accordingly, we affirm the order of the Chancery Division denying Farmers Bank's motion to obtain immediate possession of the accounts receivable.

Affirmed.